OPINION OF THE COURT
Barry A. Cozier, J.
In this class action, defendant Mellon Mortgage Company (Mellon) moves pursuant to CPLR 3211 (a) (5) and (7) for dismissal of the complaint on the grounds that: (1) plaintiffs are precluded from relitigating their claims by the doctrine of collateral estoppel; and (2) the complaint fails to state a cause of action.
*236 FACTUAL ALLEGATIONS
Plaintiffs allege that, under New York law, a lender may not require a mortgagor to purchase private mortgage insurance (PMI)[1] from an insurer designated by the lender, when the unpaid principal loan amount represents 75% or less of the property’s appraised value. Plaintiffs contend that defendant Mellon, the servicer of their mortgage, did not notify them when the unpaid principal balance fell below 75% of the property’s value so that they could discontinue the PMI. Thus, plaintiffs allege that while their unpaid mortgage balance was, by October 1, 1995, less than 75% of the real estate’s appraised value at the time that the loan was made, they were charged for, and paid, PMI premiums until sometime in June 1996. Plaintiffs allege that this practice violates State law and their mortgage contracts.
According to plaintiffs, this action was instituted as a class action based upon various common questions of law, including: (1) whether defendants billed for and collected PMI premium payments from class members after the class members’ LTV ratios fell to 75% or less; (2) whether that practice violated the terms of the class members’ mortgage loans; (3) whether that practice violates General Business Law § 349; and (4) whether Mellon owed a fiduciary duty or other duty to terminate PMI for the Mellon class members in accordance with applicable law.
The complaint against Mellon contains, inter alia, causes of action for: (1) violation of General Business Law § 349; (2) breach of fiduciary duty; and (3) violation of Insurance Law § 6503 (d).
DISCUSSION
1. Insurance Law § 6503
Although not specified as a separate cause of action, plaintiffs contend that Mellon violated Insurance Law § 6503 (d). Under New York law, a lender may not require a mortgagor to carry *237 PMI when the unpaid principal loan amount represents 75% or less of the property’s appraised value. Insurance Law § 6503 (d) provides in relevant part: “[A] mortgagor shall not be required to pay, directly or indirectly, the cost of continuing mortgage guaranty insurance on a loan secured by a first lien on real estate when the unpaid principal amount of the real estate loan represents seventy-five percent or less of the real estate’s appraised value at the time the loan was made or such higher percentage of such appraised value as may be established from time to time by general regulation of the banking board”.
Plaintiffs contend that Mellon violated this statute because it required them to maintain PMI after the LTV ratio fell below 75% of the appraised value of the property at the time that the loan was made. Plaintiffs state that, by continuing to bill for and collect the PMI premiums, they were, in effect, required to continue the PMI policy. Mellon argues that section 6503 does not provide for a private cause of action. The parties agree that no New York court has addressed the issue of whether section 6503 permits a private right of action. In Deerman v Federal Home Loan Mtge. Corp. (955 F Supp 1393, 1401 [ND Ala 1997], affd 140 F3d 1043 [11th Cir 1998]),[2] apparently the only decision to interpret New York Insurance Law § 6503, the Alabama Federal District Court held that the Bauers did not have a private right of action under this provision and that neither their mortgage nor any other New York statute required the bank to provide notice to the Bauers about how or when the mortgage insurance was to be canceled.
As a preliminary matter, collateral estoppel does not apply to pure questions of law. Consequently, the doctrine of collateral estoppel does not preclude plaintiffs from litigating this issue. (American Home Assur. Co. v International Ins. Co., 90 NY2d 433 [1997].) However, this court concurs with and adopts the reasoning in Deerman (supra), as to section 6503 and a private right of action.
Section 6503 does not expressly provide for a private right of action. Typically, courts do not construe the Insurance Law as providing for a private right of action, in the absence of express language authorizing such enforcement. (See, e.g., Rocanova v Equitable Life Assur. Socy., 83 NY2d 603 [1994] [no private right of action under Insurance Law § 2601]; Kurrus v CNA *238 Ins. Co., 115 AD2d 593 [2d Dept 1985].) To determine whether a statute grants a private right of action for civil damages, a court must apply a tripartite test: (1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purposes; and (3) whether creation of such a right would be consistent with the legislative scheme. (Sheehy v Big Flats Community Day, 73 NY2d 629, 633-634 [1989], citing Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314, 329-331 [1983].)
Arguably, plaintiffs’ allegations satisfy the first two prongs of this test. However, the claims fail to comport with the third, and the most important of the test (Hoxie’s Painting Co. v Cato-Meridian Cent. School Dist., 76 NY2d 207 [1990]). A private right of action should not be judicially sanctioned where it is incompatible with the enforcement mechanism chosen by the Legislature or discordant with some other aspect of the over-all statutory scheme. (Izzo v Manhattan Med. Group, 164 AD2d 13 [1st Dept 1990], lv dismissed 77 NY2d 989 [1991].) The Legislature has provided express administrative remedies.[3] Thus, enforcement is more appropriate within the province and jurisdiction of the New York State Superintendent of Insurance. (Kurrus v CNA Ins. Co., supra.)
Furthermore, plaintiffs do not allege that they were actually required to, or in any way coerced into continuing the PMI policy in violation of the statute. Rather, plaintiffs contend that, by continuing to bill them, Mellon, in effect, caused them to continue the insurance by failing to apprise them of their rights to terminate coverage. There is pending legislation to address this issue and require appropriate notification. (See, 1997 NY Senate Bill S 5343.)
2. Violation of General Business Law § 349
Plaintiffs allege that Mellon’s practice of continuing to bill and collect PMI premium payments from the class members constitutes unfair, unconscionable, and deceptive commercial acts or practices in violation of General Business Law § 349. General Business Law § 349 provides in relevant part: “(a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.”
*239 Plaintiffs allege that their mortgage contracts provide that their obligation to continue to pay PMI will continue as long as required by law. Thus, plaintiffs assert that, by continuing to bill them for PMI, Mellon reasonably led plaintiffs to believe that they were required to continue to maintain such insurance.
To establish a violation of General Business Law § 349, the conduct complained of must be consumer-oriented and have a broad impact on consumers at large. (Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d 20 [1995].) A prima facie case also requires a showing that defendant is engaging in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof. (Supra.) Plaintiffs claim that their contract provides that they pay PMI only until their obligations end by operation of applicable law. In addition, Mellon’s actions were intentionally designed to make them believe that their obligation continued. At this stage of the litigation, the pleadings are sufficient to require an answer to the allegations.
Having made this threshold showing, plaintiffs may establish their prima facie case by demonstrating that defendant Mellon is engaging in an act or practice that is deceptive in a material way and that plaintiffs have been injured by it. (New York Univ. v Continental Ins. Co., 87 NY2d 308 [1995].) Since Mellon required the PMI, and because it handled the billing and the payments and premiums, it could be deemed to have a knowledge superior to that of its customers regarding the terms of their own contractual arrangements, thereby, giving it a legal duty to disclose information pertaining to the PMI. (See, Super Glue Corp. v Avis Rent A Car Sys., 159 AD2d 68 [2d Dept 1990], lv denied 77 NY2d 801 [1991].)
Moreover, plaintiffs are not collaterally estopped from asserting this claim because it was not adjudicated in Deerman (955 F Supp 1393, supra; D’Arata v New York Cent. Mut. Fire Ins. Co., 76 NY2d 659 [1990]). The sole defendant in Deerman was FHLMC. The court ruled that, as a Federal instrumentality, FHLMC was not bound by the unauthorized acts of its sellers/servicers. (Deerman v Federal Home Loan Mtge. Corp., supra, at 1400, citing Federal Crop Ins. Corp. v Merrill, 332 US 380 [1947].) Furthermore, in Deerman, the court indicated that plaintiff might have a claim under the statute stating that “to the extent that New York law, including [General Business Law § 349], would require disclosure of the cancellation provisions, the servicers are required to follow that law.” (Supra, at 1400.)
*240 The further statement by the court that “even if the Bauers could allege an ‘act or practice’ by the FHLMC in New York, they cannot demonstrate that such an ‘act or practice’ was deceptive” {supra, at 1401), does not bar this claim because it constitutes dictum and was unnecessary to the court’s ruling. (Sahn v AFCO Indus., 192 AD2d 480 [1st Dept 1993]; Town of E. Hampton v Omabuild USA No. 1, 215 AD2d 746 [2d Dept 1995].)
3. Breach of Fiduciary Duty
Plaintiffs allege that members of the Mellon class relied upon and placed their trust in Mellon to obtain PMI, select the insurer that they would be required to use, renew or cancel PMI, provide proper advice concerning PMI and properly bill for PMI premium payments, as required by applicable law. Plaintiffs also allege that Mellon did not provide the members with copies of their policies, consult them regarding the selection of their PMI insurers, and provide them with information about policy terms, including conditions for termination. Plaintiffs allege further that by virtue of the relationship of the parties and the superior bargaining position of Mellon, a confidential or fiduciary relationship existed between Mellon and the Mellon class members. According to plaintiffs, Mellon breached its fiduciary duty by continuing to bill for and collect PMI premiums after the requirement for PMI terminated in accordance with New York law.
The “legal relationship between a borrower and a bank is a contractual one of debtor and creditor and does not create a fiduciary relationship between the bank and its borrower or its guarantors.” (Bank Leumi Trust Co. v Block 3102 Corp., 180 AD2d 588, 589 [1st Dept 1992], lv denied 80 NY2d 754 [1992].) To be sure, a fiduciary relationship may arise even between a bank and a customer if there is either “ ‘a confidence reposed which invests the person trusted with an advantage in treating with the person so confiding’ ” (Manufacturers Hanover Trust Co. v Yanakas, 7 F3d 310, 318 [2d Cir 1993], motion to vacate denied 11 F3d 381 [1993]) or an assumption of control and responsibility. (Matter of Gordon v Bialystoker Ctr. & Bikur Cholim, 45 NY2d 692 [1978].) However, the complaint does not allege facts indicating that Mellon’s actions were designed to instill a special relationship apart from the ordinary debtor/ creditor relationship. Moreover, plaintiffs’ attempt to create a fiduciary duty based upon the existence of an escrow account is unpersuasive. Plaintiffs do not allege that Mellon in any way misused the funds placed into escrow for payment over to Ge *241 mico. (Cf., Davis v Dime Sav. Bank, 158 AD2d 50 [3d Dept 1990] [allegations of fraud in connection with escrow arrangement for the payment of taxes].)
Accordingly, Mellon Mortgage Company’s motion to dismiss the causes of action predicated upon its alleged violation of Insurance Law § 6503 (d), and breach of fiduciary duty is granted. The foregoing causes of action are dismissed and severed. Further, Mellon’s motion to dismiss the cause arising from its alleged violation of General Business Law § 349 is denied in that plaintiffs’ amended complaint sufficiently states a cause of action and the claim is not barred by the doctrine of collateral estoppel.

. Generally, mortgage lenders require home buyers who obtain first mortgages with down payments representing less than 20% of the purchase price to obtain PMI. PMI insures lenders against defaults in the borrower’s payments of principal and interest on the loans. According to plaintiffs, PMI is not required to be maintained for periods when the loan-to-value ratio (LTV ratio) on a mortgage loan falls below a specified percentage. In calculating the LTV ratio, the loan amount is the outstanding principal balance on the loan, and the appraised amount is the appraised value of the property at the time the loan was originated.

. The Bauers were two of the named plaintiffs in the Federal action in the Northern District of Alabama against the owners of their mortgage, the Federal Home Loan Mortgage Corporation (FHLMC).

. See, e.g., Insurance Law § 6504 (affords the Superintendent administrative remedies), § 6508 (grants the Superintendent additional powers to adopt regulations necessary to enforce the provisions of article 65), § 109 (c) (administrative remedies applicable to all provisions of the Insurance Law), § 109 (d) (civil remedies).